IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAVID BARBER,

                Plaintiff,                      OPINION AND ORDER

    v.

                                                          16-cv-221-wmc

WAYNE STUESSY,

                Defendant.

*Pro se* plaintiff David Barber claims that defendant Wayne Stuessy, the records supervisor at Oakhill Correctional Institution, refused to release Barber from custody after he completed his sentence in violation of the Eighth Amendment. The parties have filed cross motions for summary judgment. (Dkt. ##26, 31.) For the reasons explained below, defendant's motion will be granted and plaintiff's motion will be denied.

UNDISPUTED FACTS[1]

**A.    The Parties**

At all times relevant to this complaint, Barber was incarcerated at Oakhill Correctional Institution, where Stuessy is the Offender Records Supervisor. Stuessy's job duties include: (1) supervising and performing sentencing calculations; and (2) establishing maximum discharge dates, parole eligibility, mandatory release and extended supervision eligibility dates for offenders.

---

[1] Unless otherwise noted, the following undisputed facts are drawn from the parties' proposed findings of fact and responses.

1

## B. Barber's Sentences

On November 27, 2001, Barber was convicted in three different cases in Rock County. In Case No. 2001-CF-2272, Barber was convicted of possession with intent to deliver cocaine. In both Case No. 2001-CF-2363 and 2001-CF-2393, he was convicted of felony bail jumping. Barber was originally placed on six years of probation, with his sentences withheld in all three cases. On April 5, 2002, Barber's probation was revoked in all three cases. In Case No. -2272, he was sentenced to four years in prison, 11 years extended supervision; in Case No. -2363, he was sentenced to one year in prison, nine years extended supervision; and in Case No. -2393, he was sentenced to one year in prison, nine years extended supervision. All of these sentences were to run concurrently.

As of October 25, 2005, Barber had completed his initial confinement time and he was entered into a treatment program at Rock Valley Community Program. On August 3, 2006, he was terminated from that program for drug use and other violations. On January 24, 2007, Judge Richard Werner revoked Barber's extended supervision altogether in Rock County Case Nos. 2001-CF-2272, -2363 and -2393, for which he received an additional sentence of three years, three months and 19 days of re-incarceration time to be served concurrently. Barber was released from prison on extended supervision on September 3, 2008.

However, Barber's extended supervision was once again revoked by a Revocation Order and Warrant dated April 21, 2010. That order was signed by Diane Norman, the Division of Hearings and Appeals Assistant Administrator, who imposed a concurrent three-year, eight month and 20 day period of reincarceration in each case. After this second

2

revocation, Barber was set to be released onto extended supervision on April 7, 2013, at which point his sentence of extended supervision would be five years, one month and one day remaining in Case No. 2001-CF-2272; two months and 15 days remaining in Case No. -2363; and no time remaining in Case No. -2393.[2]

**C.     November 13, 2012 Order Regarding Sentence Credit**

On November 13, 2012, while Barber was in prison at Oakhill, however, Circuit Judge Richard Werner signed an Amended Order for Reconfinement after Revocation of Extended Supervision in the three cases. That Order stated in full: "11/12/12 Court Orders 133 Days additional credit – Total of 316 Days."

Immediately after receiving this order, Barber notified defendant Stuessy that (1) Judge Werner intended to reduce the time Barber was currently serving, and (2) as a result, Barber should be released from Oakhill the following week. Stuessy disagreed with Barber's interpretation of Judge Werner's order, however, maintaining that Barber was not entitled to sentence credit for his current reconfinement period. Stuessy believed this for three reasons. First, under Wisconsin Department of Correction's ("DOC") interpretation of state statutes, sentencing credit could only be applied to reconfinement time for time spent in custody in connection with that same violation. Stuessy originally believed the sentence credit was granted for time Barber spent at Rock Valley Community Programs in 2006. Because Barber had been previously revoked in 2007, however, Stuessy now believed that

---

[2] The parties do not explain how Stuessy arrived at the basis for these remaining periods of extended supervision, particularly why the two nine-year, concurrent extended supervision sentences seem now to be running on different tracts. As the parties do not appear to dispute Stuessy's calculations, however, the court need not resolve them.

3

any credit for time in 2006 should have been applied to reduce his reconfinement time in 2007. To the extent it was not, Stuessy argues that the credit could only be applied to reduce his remaining term of extended supervision, not his current reconfinement period.

Second, as Record Supervisor, Stuessy did not believe that the sentencing court had the legal authority to set reincarceration time. Rather, under Wis. Stat. § 302.113(9)(am), Stuessy maintained that either DOC or the Division of Hearings and Appeals ("DHA") sets the reincarceration time, depending on whether the offender had a revocation hearing. Here, DHA had set Barber's reincarceration time, so Stuessy believed it would violate § 302.113(9)(am) to interpret Judge Werner's order as reducing the current reincarceration time.

Third, it was defendant Stuessy's understanding that credit could be earned only for time spent at a treatment facility, at least if leaving the facility would subject the individual to escape charges. Stuessy did not believe Barber would have been subject to escape charges if he had left Rock Valley Community Programs, so Stuessy questioned whether Barber was entitled to any credit at all. Stuessy also consulted with Stephanie Nally, the Division of Adult Institutions' Records Consultant, regarding the relevant statutes. She agreed with Stuessy's analysis that a sentencing court could not apply sentence credits from a previous violation period to reduce a later confinement time.

D. Amended Orders for Sentence Credit

On November 16, 2012, defendant Stuessy wrote to Judge Werner seeking clarification. He wrote that under DOC interpretation of Wis. Stat. § 304.072 and § 973.155, sentence credit can be applied to a reconfinement period only if the credit was

4

earned for time spent in custody on the cases for which the person is reconfined. Stuessy wrote that it appeared that the 133 day credit was for the time Barber spent at Rock Valley Community Programs, which in Stuessy's opinion, was not time in custody for which he was entitled to credit.

On November 19, 2012, Judge Werner responded to Stuessy that he had received the letter, and wrote, "My previous order determining credit remains the order of the Court." Stuessy interpreted Judge Werner's November 19, 2012, response to mean that the court felt the credit was appropriate, but also took no issues with Stuessy's interpretation of the relevant statutes. Stuessy thus intended to apply the credit to Barber's extended supervision time.

On November 25, 2012, however, Barber wrote to Stuessy, stating that he had been told his release was on hold, pending clarification from the court regarding the 133 days sentence credit. Barber asked whether a response had been received from the court yet. On November 26, 2012, Stuessy responded to Barber that his release date would not change. Stuessy provided Barber with a copy of the November 19, 2012, letter from Judge Werner. On December 4, 2012, Judge Werner then signed a 2nd Amended Order for Reconfinement after Revocation of Extended Supervision in the three Rock County criminal cases. The order stated in each case, "11/12/2012 Court Orders Current term of Reconfinement to be reduced 133 days."

Stuessy believed that order violates Wis. Stat. §§ 302.113(9)(am), 304.072(1), and 973.155(2), by applying unrelated credit to a later confinement period contrary to the

5

controlling revocation order. After he received the order, Stuessy attempted to contact the court for clarification by calling the court by phone at least three times that same week.

On December 11, 2012, Judge Werner issued a third order. The December 11, 2012 order stated:

> IT IS HEREBY ORDERED that the Order for Reconfinement after Revocation/Extended Supervision dated November 13, 2012 and the Amended Order for Reconfinement after Revocation/Extended Supervision dated December 4, 2012 are vacated. The original Order for Reconfinement after Revocation/Extended Supervision dated January 24, 2007 remains in full force. The Court further orders that the defendant's current term of Reconfinement shall be credited with an additional 133 days.

Barber was released from Oakhill on the same day Stuessy received the court's clarification.

OPINION

"A plaintiff states a claim for an Eighth Amendment violation if he is detained in jail [or prison] for longer than he should have been due to the deliberate indifference of corrections officials." *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015); *see also Figgs v. Dawson*, 829 F.3d 895, 902-03 (7th Cir. 2016); *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). However, "[d]eliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs*, 829 F.3d at 903; *Armato v. Grounds*, 766 F.3d 713, 719–20 (7th Cir. 2014).

Barber claims that Stuessy acted with deliberate indifference by failing to release him upon receiving Judge Werner's November 13, 2012, order. The evidence of record simply does not support that claim. In making determinations about a prisoner's release

6

date, the Seventh Circuit has explained that prison officials are permitted to rely upon "a reasonable interpretation of a state statute," even if they are ultimately mistaken. *Armato*, 766 F.3d at 721; *Campbell*, 256 F.3d at 701. When defendant Stuessy received Judge Werner's November 13 order, he knew there was a *possibility* that Judge Werner intended the 133 day credit to apply to Barber's current reconfinement period, but Stuessy could not stop there, knowing that interpreting the judge's order as applying to Barber's current reconfinement period would be contrary to DOC's long-standing interpretation of state statutes applying to sentencing credit. Thus, Stuessy properly sought clarification from the Division of Adult Institutions, as well as from Judge Werner himself, before acting.

When Judge Werner issued an amended order on December 2, Stuessy again sought clarification, believing that the order violated state law. When Judge Werner issued the final, unambiguous December 11 order, however, Barber was immediately released. Given this history, no reasonable jury could find that Stuessy's actions are those of someone who is "ignoring a known risk." Rather, his effort to seek clarification of Judge Werner's orders, and to interpret them in light of DOC practice, defeats any claim of deliberate indifference. *See Armato*, 766 F.3d at 721 (plaintiff's Eighth Amendment claim based on being held beyond term of his incarceration failed where defendants believed court's sentencing order violated state law).

Even if a reasonable fact-finder *could* conclude that Stuessy was deliberately indifferent, summary judgment would still be appropriate here on grounds of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established

7

statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The law is "clearly established" when "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Campbell*, 256 F.3d at 701. The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. *Id.* For this reason, prison officials are entitled to qualified immunity even if they rely on a *mistaken* interpretation of state law in computing a release time, so long as the state law was not "clearly established." *See Campbell*, 256 F.3d at 701.

Here, there is no dispute that defendant Stuessy was relying on DOC's longstanding interpretation of state statutes regarding application of sentencing credit. As Stuessy concedes in his briefing, the Wisconsin Supreme Court recently rejected DOC's interpretation of these statues in *State v. Obriecht*, 2015 WI 66, 363 Wis. 2d 816, 867 N.W.2d 387, holding that sentence credit given by a court after a revocation and reconfinement should be applied to reduce the incarceration period, rather than parole, even if the reincarceration order itself was not issued by the court. *Id.* ¶ 48. But prior to the 2015 *Obriecht* decision, it was not clearly established that DOC's interpretation was incorrect. In fact, both the circuit court and court of appeals had agreed with the DOC's interpretation in the *Obriecht* case, concluding that a sentencing judge did not have the authority to apply credits to a period of reincarceration ordered by the Department of Hearings and Appeals. *Id.* ¶ 18.

8

In sum, when Stuessy received Judge Werner's November 13 and December 4, 2012 orders, it was not yet clearly established that state law required the sentencing credit to be applied to Barber's current period of incarceration. Therefore, Stuessy is entitled to qualified immunity because he did not violate any clearly established right in failing to immediately release Barber.

ORDER

IT IS ORDERED that:

(1) Plaintiff David L. Barber's motion for summary judgment (dkt. #26), is DENIED.

(2) Defendant Wayne Stuessy's motion for summary judgment (dkt. #31), is GRANTED.

(3) The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 3rd day of October, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge